RECEIVED
IN LAKE CHARLES, LA.
AUG 24 2012
TONY R. MOORE, CLERK
BY_____
          DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| NIGEL JACKSON | : | CIVIL ACTION NO: 2:10-CV-01436 |
| VS. | : | JUDGE MINALDI |
| MICHAEL J. ASTRUE, COMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Presently before the court is an action for judicial review of a final decision of the Commissioner of Social Security which denied the Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.

## FACTS

Nigel Jackson filed an application for Disability Insurance Benefits with the Commissioner of Social Security on March 30, 1983.[1] The Administrative Law Judge ("ALJ") awarded Jackson benefits beginning February 19, 1983 based on impairments consisting of: drug and alcohol addiction, seizures controlled by medication, severe and recurring headaches, and mental retardation.[2]

In 1996, Congress passed the Contract with America Advancement Act (CAAA) which amended the Social Security Act to provide that an individual would not be considered disabled if

---

[1] Tr. 166-171.

[2] *Id.*

1

alcoholism or drug addiction was a contributing factor material to the Commissioner's disability determination. 42 U.S.C. § 423(d)(2)(C).

Jackson received benefits for approximately 19 years. On February 6, 2003, the Commissioner notified Jackson that his benefits would be terminated on May 1, 2003, because benefits were no longer awarded to recipients whose award was based on substance addiction.[3]

Jackson filed a timely motion to request an administrative hearing to overturn the decision.[4] On December 15, 2003, an Administrative Law Judge ("ALJ") held a hearing in which Jackson and a vocational expert testified.[5] On March 25, 2004, the ALJ affirmed the Commissioner's decision to terminate Jackson's benefits.[6]

Jackson appealed the ALJ's decision to the Social Security Administration's Appeals Council.[7] The Appeals Council declined to review the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner.[8]

After exhausting all the administrative remedies, Jackson sought judicial review of the Commissioner's final decision.[9] Jackson argued that the decision contained multiple legal errors and thus was unsupported by substantial evidence.[10]

---

[3] Tr. 11.

[4] Tr. 172-174.

[5] Pl.'s Br. In Supp. of Reversal Pg. 2.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

On December 12, 2005, this Court reversed and remanded the case for future administrative proceedings.[11] The ALJ held an administrative hearing on September 26, 2007. On November 9, 2007, the ALJ issued a partially favorable decision which awarded benefits effective June 30, 2006 but did not award benefits from May 1, 2003 to June 30, 2006.[12] The ALJ reasoned that prior to June 30, 2006, "there were a significant number of jobs in the national economy that [Jackson] could have performed," however beginning June 30, 2006, there were no longer "a significant number of jobs in the national economy that [Jackson] could perform."[13] Therefore, "[Jackson] was not disabled prior to June 30, 2006, but became disabled on that date and has continued to be disabled through the date of this decision."[14]

Jackson once again sought timely review by the Social Security Appeal Council to overturn the decision which rejected Jackson's entitlement from May 1, 2003 to June 20, 2006.[15] On July 12, 2010, the Appeals Council again refused to review the ALJ's decision, thus making the Commissioner's decision final.[16]

Jackson now seeks judicial review in this court to reverse the Commissioner's final decision and award benefits beginning May 2, 2003. Jackson alleges the following errors:

> (1) The ALJ failed to find two medically determinable impairments: psychotic disorder and mild mental retardation;
> (2) The ALJ's residual functional capacity assessment is not supported by substantial evidence;

---

[11] Tr. at 1124.

[12] Tr. at 1669-1699.

[13] Tr. at 21-22.

[14] *Id.* at 22.

[15] Pl.'s Br. In Supp. of

[16] Tr. at 1094-1096.

3

(3) The ALJ erred in overturning an earlier finding of the Commissioner that was presumed to be "final;"
(4) The ALJ denied the Plaintiff the right to cross-examination and, thus, denied due process of law;
(5) The ALJ erred in relying on the vocational expert's testimony.

## STANDARD OF REVIEW

The federal courts review the Commissioner's denial of social security benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995). If the Commissioner's findings are supported by substantial evidence, they must be affirmed. *Martinez*, 64 F.3d at 173. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995) (internal quotations omitted); *see also Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir.1987). The court does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. *See Brown*, 192 F.3d at 496. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Id.* (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990)).

The claimant has the burden of proving he has a medically determinable physical or mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. 453 20 C.F.R. § 404.1572(a) and (b). The ALJ uses a five-step sequential process to evaluate claims of disability and decides

whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.

The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step. Thus, the claimant must show first that he is no longer capable of performing his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant satisfies this burden, then the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987). Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding. *Id.*

## LAW AND ANALYSIS

### I. Medically Determinable Impairments Ignored by ALJ

#### (a) Psychotic Disorder

Disability claims under the Social Security Act (the "Act") are evaluated by a sequential process set forth in the regulations promulgated by the Secretary. *See* 20 C.F.R. §§ 404.1520, 416.920 (1984). If a claimant is found not to be disabled at any step in this sequential evaluation, the remaining steps are not considered. 20 C.F.R. § 404.1520(a) (1984).

The first step involves the determination whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (1984). The second step, which is here challenged, requires the fact finder to decide whether a claimant's impairment is severe, irrespective of age, education, or work experience. 20 C.F.R. § 404.1520(c) (1984). If the claimant is found to have a severe impairment, it is compared against a list of impairments found in Appendix 1 of the

regulations. 20 C.F.R. § 404.1520(d) (1984). If the claimant's impairment is listed, the individual is considered disabled. Id.

The record indicates that the commissioner's own consultant, Dr. Haag, diagnosed Jackson as having psychotic disorder. A psychotic disorder is an Axis I diagnosis and defined as a major mental disorder in Appendix I.[17] Where there is some evidence of a major mental disorder listed in Appendix I, the ALJ must determine the Plaintiff's severe mental impairments at Step Two. *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 806 (N.D. Tex. 2009). The ALJ considered evidence regarding "post-traumatic arthritis of the right knee," "seizure(s)," "reduced vision in the left eye," "substance dependence," and "a history of schizophrenia" but the ALJ failed to consider the psychotic disorder at Step Two of the analysis.

In addition, the ALJ must determine if the mental impairment is "severe." In *Stone v. Heckler*, 725 F.2d 1099, 1101 (5th Cir. 1985), the court, in censuring misuse of the severity regulation, forewarned that we would "in the future assume that the ALJ and the Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) is used." *Stone*, 752 F.2d at 1106; *see also Anthony*, 954 F.2d at 293-94. There is no evidence in the opinion issued by the ALJ or otherwise that the ALJ used the proper legal standard.

The ALJ's failure to apply the *Stone* standard is a legal error. *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 806 (N.D. Tex. 2009). The Fifth Circuit mandated that "[u]nless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106

---

[17]Appendix 1 to Subpart P of Part 404

6

(emphasis added). Because the Court finds that the ALJ applied an incorrect standard of severity at step 2 of the sequential disability determination process and failed to consider the mental disorder listed in Appendix I, remand is required.

### (b) Mental Retardation

On January 31, 1984 ALJ Carlisle awarded Jackson benefits based on physical and mental impairments, in the decision ALJ Carlisle found that Jackson was suffering from "mental retardation."[18] In 2007, ALJ Ragona rejected the finding made by ALJ Carlisle and ruled that Jackson was not suffering from mental retardation.[19]

The Fifth Circuit has held that "[o]nce evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged." *Rivas v. Weinberger*, 475 F.2d 255 (5th Cir. 1973). Additionally, the court has held that it needs "to give finality to the decision of Social Security Administration," and "decisions made by the Administration cannot be repeatedly reconsidered." *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). Therefore, the ALJ erred when he rejected the Step 2 severity findings of mental retardation made by an earlier ALJ.

This matter will be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion. On remand the ALJ must, as a part of his step 2 analysis, determine whether Jackson's psychotic disorder constitutes severe impairments within the meaning set forth by the Fifth Circuit in Stone. The ALJ must make this determination with the benefit of a

---

[18] Tr. At 165-171.

[19] Tr. At 1094-1096.

psychological consultative examination. If the ALJ determines that these impairments are severe, the ALJ should proceed through the sequential steps of the disability determination process.

## II. Mental Residual Functional Capacity Assessment is Unsupported by Substantial Evidence

At Step Two of the evaluation, ALJ Ragona found that Jackson suffered from severe impairments of: post-traumatic arthritis of the right knee, a history of seizure disorders, and reduced vision in the left eye, and a history of schizophrenia.

ALJ Ragona found that Jackson's impairments may meet or equal to Listing 12.03,[20]

---

[20] The Social Security Administration has developed rules called Listing of Impairments for most common impairments. The listing for a particular impairment describes a degree of severity that Social Security Administration presumes would prevent a person from performing substantial work. If your schizophrenia is severe enough to meet or equal the listing, you will be considered disabled.

To Meet Listing 12.03 Requirements, the clamant must satisfy both parts A and B and just part C alone.

To meet part A of the schizophrenia listing, you must have medically documented persistence, either continuous or intermittent, of one or more of the following:
    1. Delusions or hallucinations; or
    2. Catatonic or other grossly disorganized behavior; or
    3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following: (a) Blunt affect; or (b) Flat affect; or (c) Inappropriate affect; or 4. Emotional withdrawal and/or isolation.

To meet Part B, the claimant must demonstrate one or more of the following symptoms:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace;
    or 4. Repeated episodes of decompensation, each of extended duration.

If you do not meet parts A and B of the listing, you will be disabled if you meet part C. Part C requires Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

[21] Tr. at 16.

however the ALJ found that Jackson does not have the symptomatic requirements or limitation of function required by listing 12.03 when Jackson is abstinent from alcohol and drugs.[21]

Under the Social Security Act, an individual will not be considered disabled for the purposes of disability insurance benefits if alcoholism or drug addiction was a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. § 432(d)(2)(c). "Drug or alcohol abuse is material to disability if the ALJ would not 'find [the claimant] disabled if [the claimant] stopped using drugs or alcohol.'" *Brown v. Apfel*, 192 F.3d 492, 499 (5th Cir. 1999) (quoting, 20 C.F.R. § 416.935(b)(1)). ALJ Ragona found that Jackson, while abusing cocaine and alcohol, was "paranoid, with a flat affect and irritable mood," demonstrated "illogical thinking accompanied by blunt affect," and "had persistent dreams and nightmares of killing people." ALJ Ragona was able to conclude that Jackson demonstrated a sufficient number of symptoms to meet the Listing 12.03 requirements. The ALJ further determined that Jackson, while abusing cocaine and alcohol, exhibited moderate restriction of activities of daily living such as "marked difficulties in maintaining social functioning; marked difficulties in maintain concentration, persistence, or peace; and reported episodes of decompensation."[21] The ALJ's report contends that these limitations satisfy the functional requirements of Listing 12.03 and therefore result in a finding that Jackson is disabled.[22] Nonetheless, the ALJ determined that while abstaining from drug and alcohol use, Jackson did not have the symptoms or limitation of function necessary to meet Listing 12.03.[23]

Drug or alcohol abuse is material to disability only if the ALJ would not find the claimant disabled if he stopped using drugs or alcohol. *Brown*, 192 F.3d at 494-498. Critical to this

---

[21] Tr. at 4.

[22] *Id.*

[23] *Id.*

9

determination is that the ALJ's assessment of Jackson's drug and alcohol-free mental residual functional capacity. The ALJ determined that Jackson retained the residual functional capacity to perform medium work, limited by the inability to work at heights or around machinery.[24] Jackson's mental impairments, aside from drug and alcohol use, further reduced his work capacity to One and Two Step jobs with limited public interaction with the public.[25] However, we find that the instant record lacks substantial evidence to support the mental component of the ALJ's assessments.

On July 9, 2003, Dr. James Quillin, performed a psychological evaluation and determined that Jackson appeared capable of understanding and following simple directions and instructions without too much difficultly.[26] Dr. Quillin noted that Jackson was able to read at a third grade level and perform basic arithmetic operations, therefore borderline intellectual function could not be ruled out.[27] Quillin further noted that Jackson was moody, irritable, and appeared somewhat paranoid. In conclusion, Quillin diagnosed a history of cocaine dependence in remission; likely mixed personality disorder with sociopathic and paranoid features, and depression. Quillin opined that Jackson's status was poor and it was "very doubtful" that Jackson could make a satisfactory adjustment to a more functional status.[28] Despite a thorough evaluation, Quillin failed to distinguish between Jackson's mental status while abusing drugs and alcohol, and his mental impairments and related limitation while drug and alcohol free.

---

[24] Tr. at 18, 21-22.

[25] *Id.*

[26] Tr. at 1104-1108.

[27] *Id.*

[28] *Id.*

Relying on Quillin's evaluation, a non-examining agency physician, Jack L. Spurrier, completed a mental residual function capacity assessment examination ("MRFC").[29] He indicated that Jackson had moderate limitation in his ability to understand and remember detailed instruction; carry out detailed instructional work in coordination with or proximately to others without being distracted by them; interact appropriately with the general public; and to set realistic goals to make plans independently of others.[30] However, Spurrier states that the MRFC contained significant limitations that would preclude successful adaptation to the work setting.[31] In conclusion, Spurrier noted that abstinence from drugs would significantly improve his functional ability, and that, therefore drug and alcohol abuse was a material factor.[32]

Spurrier did not explain whether the MRFC that he completed was an indication of Jackson's limitations while using abusing drugs and alcohol or while abstaining therefrom. If it reflects the former condition, then it is of no use in assessing the latter condition which is the focus of our instant inquiry. If the MRFC reflects Jackson's mental limitations while abstaining from substance abuse, then it is inconsistent with the ALJ's residual functional capacity assessment. In fact, Spurrier recognized that the MRFC contained significant limitations that would preclude successful adaption to the work setting.[33]

The ALJ's decision on the mental residual functional capacity assessment is hastily derived from a portion of Spurrier's report, Jackson's testimony, and from physician's notes compiled

---

[29] Tr. at 873-876.

[30] Tr. at 871-872.

[31] *Id*

[32] *Id.*

[33] *Id.*

11

during Jackson's multiple admissions to Veterans Administration treatment facilities. In fact, the ALJ cited Jackson's dramatic improvement in function during his most recent inpatient treatment as "proof" of the materiality of Jackson's substance abuse.[34] While the ALJ correctly noted Jackson's improvement in GAF[35] score during his most recent admission (September 2003), he overlooked at the time of Jackson's prior admission (August 2002), that he was also drug free. Physicians' note from August 11, 2003, admission indicated that Jackson was angry and intimidating.[36] Jackson reported that he had a physical altercation with his neighbor and the physician noted that Jackson has a pattern of anti-social and violent behavior towards others.[37] During the course of his admission, Jackson was diagnosed with schizophrenia, paranoid type; a history of polysubstance abuse/dependence; and antisocial personality disorder.[38] A GAF of 55 was assigned.[39] [40] During his stay at the facility, Dr. Paul Molinar assigned Jackson a GAF of 45.[41] [42]

---

[34] Tr. at 15.

[35] A Global Assessment of Function ("GAF") score is a numerical short hand used by mental health practitioners to document how a patient is doing over all mentally. By Federal regulation, Social Security has declined to use the GAF scale on the basis that it does not have a correlation to the severity requirements in the mental disorders listings of impairments.

[36] Tr. at 1041.

[37] Tr. at 1040.

[38] Tr. at 1041.

[39] *Id.*

[40] A GAF of 55 denotes moderate symptom of moderate difficulties in social occupational, or school functioning. *Diagnostic and Statistical manual of Mental Disorders*, Fourth Edition DSM-IV, pg. 32.

[41] Tr. at 924-925.

[42] A GAF of 45 denotes serious symptoms or any serious impairment in social, occupational, or school functioning. *Diagnostic and Statistical manual of Mental Disorders*, Fourth Edition DSM-IV, pg. 32.

On September 3, 2003, Jackson was discharged by Dr. Molinar with a GAF of 40.[43] Presumably during the admission, Jackson remained drug and alcohol free. In sum, Jakcson's treatment records reveal that even while abstaining from drug and alcohol use and living in controlled environments, Jackson periodically exhibited moderate to serious impairments of functioning. As in Brown, "nowhere in these records do any of [Jackson's] doctors express an opinion as to what [Jackson's] condition would be if [he] ceased abusing drugs or alcohol. *Brown v. Apfel*, 192 F.3d 492, 499 (5th Cir. 1999).

Also troubling is the apparent instability of Jackson's mental impairment as evidenced by the fluctuating GAFs and the instances of decompensation even while sober. This concern is succinctly crystallized by Dr. Molinar who, in a November 4, 2003 letter, wrote that he treated Jackson from August 18, 2003 until September 3, 2003, and that Jackson appeared unable to maintain gainful employment.[44] This is not the type of evidence that compels the ALJ to determine that Jackson can find work, or that he can also hold that employment for a significant period. *Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990); *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).

Accordingly, we find that the ALJ's residual functional capacity assessment is not supported by substantial evidence. As the ALJ's Step Five determination was premised upon the unsupported assessment, we find that the ALJ's ultimate conclusion that Jackson was not disabled is also not supported by substantial evidence.

---

[43] Tr. at 1018.

[44] Tr. at 1065.

This matter will be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.[45]

Lake Charles, Louisiana, this 23 day of August, 2012.

*signature*
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[45] Since remand is required for an error at step 2 as it pertains to Plaintiff's mental impairments, the Court **will not** consider the remaining issues for review. *Scroggins*, 598 F.Supp.2d at 807.

14